**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>**MANUEL MEDIAVILLA, INC.,**<br><br>Debtor | **CASE NO. 13-2800 (MCF)**<br><br>**CHAPTER 11** |
| IN RE:<br><br>**MANUEL MEDIAVILLA AND**<br>**MAYDIN G. MELENDEZ,**<br><br>Debtors | **CASE NO. 13-2802  (MCF)**<br><br>**CHAPTER 11** |

## OPINION AND ORDER

Before the Court are cross motions for partial reconsideration by PRLP 2011 Holding, LLC ("PRLP"), the individual and corporate debtors, Manuel Mediavilla, Maydin G. Melendez and Manuel Mediavilla, Inc., respectively ("Debtors") of the Opinion and Order entered on June 16, 2015. For the reasons stated below, the Court denies PRLP's motion for partial reconsideration and grants Debtors' motion for reconsideration in part. Debtors are ordered to file an amended Joint Plan subject to the conditions stated herein within thirty (30) days.

### I.    Factual Background

Debtors contracted as co-obligees, a loan agreement with creditor Banco Popular de Puerto Rico.  Each co-debtor provided real properties as collateral in guarantee of the obligation in case of default. Each co-debtor provided personal joint and several liability guarantees. On September 29, 2011, Banco Popular de Puerto Rico transferred its claims to PRLP as part of

-1-

purchase of credits agreement. Upon the loan's maturity, Debtors and PRLP were unable to renegotiate the terms of the loan agreement. Thereafter PRLP requested full payment of the loan. Unable to collect, a year later, PRLP commenced a civil action against Debtors for collection of money and foreclosure of mortgages in the Commonwealth of Puerto Rico Court of First Instance, Humacao Section.

The foreclosure proceedings prompted Debtors to file for bankruptcy under Chapter 11 on April 11, 2013, staying the Commonwealth court proceedings. On July 11, 2013, PRLP filed Proof of Claim No. 1 in the corporate case for $2,635,138.28 as fully secured and filed Proof of Claim No. 9 in the individual debtors' case for $2,635,138.28 as fully secured. On May 21, 2014, PRLP amended both claims to include $66,672.78 of pre-petition legal expenses, increasing the total amount of its claims to $2,701,810.06 in both cases. PRLP also changed the classification of its claims by separating them into secured and unsecured portions in each case. Amended Claim No. 1 in the corporate case included a $2,110,000 secured portion and a deficiency of $591,812.06 as unsecured. Amended Claim No. 9 in the individuals' case included a $400,000 secured portion and a deficiency of $2,301,811.06 as unsecured.

## II.     Case Background

To resolve several matters surrounding the Joint Plan's confirmation, Debtors' objections to PRLP's claims and PRLP's request for Debtors' conversion to Chapter 7, the Court held the first of five hearings on February 24, 2015, and concluded on June 1, 2015. On June 16, 2015, the Court entered an order denying the Joint Plan's confirmation for failure to provide for Debtors' substantive consolidation of the two cases. Debtors seek reconsideration of the Court's denial of Joint Plan's confirmation. The Court also denied several of PRLP's objections to the Joint Plan's confirmation, among them, the impairment of local taxing authority, Centro de Recaudación de Ingresos Municipales's ("CRIM") secured tax claims classified in Classes 3A

and 3B of the Joint Plan. PRLP requests the Court's reconsideration of the order, solely on this issue.

### III. Standard for Rule 9023 motions

Rule 9023 of the Federal Rules of Bankruptcy Procedure makes Rule 59 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings.[1] Rule 59(e) allows a party to file "[a] motion to alter or amend a judgment. . ." Although Rule 59(e) does not provide specific grounds to obtain the remedy requested, the Court of Appeals for the First Circuit in Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005), highlighted the following four grounds for granting a motion for reconsideration under Rule 59(e): (1) manifest errors of law and fact; (2) newly discovered or previously unavailable evidence; (3) manifest injustice; and (4) an intervening change in controlling law. Marie, 402 F.3d at 7 (citing 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995)).

Reconsideration of a judgment under Rule 59(e) is an extraordinary remedy which should be used sparingly and only when the need for justice outweighs the interests set forth by a final judgment. The underlying policy of reconsideration is to provide a court with a means to correct its own errors. Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997). Conversely, Rule 59(e) does not exist to allow parties a second chance to prevail on the merits. Voelkel v. General Motors Corp., 846 F. Supp. 1482, 1483 (D. Kan. 1994), aff'd, 43 F.3d 1484 (10th Cir. 1994). "Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence . . . [t]hey may not be used to argue a new legal theory." Jorge Rivera Surillo & Co. v. Falconer Glass Indus., 37 F.3d 25, 29 (1st Cir. P.R. 1994).

---

[1] Pursuant to Fed. R. Civ. P. 59(e), a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Rule 9023 reduces the period to 14 days after entry of judgment in bankruptcy proceedings.

## IV. PRLP's motion for partial reconsideration

PRLP seeks reconsideration of the Court's Opinion in regard to CRIM's secured claims classified as Classes 3A and 3B in Debtors' Joint Plan. In its motion, PRLP avers that CRIM's secured tax claims are entitled to priority treatment under 11 U.S.C. § 1129(a)(9)(C) by way of § 1129(a)(9)(D).[2] PRLP argues that, because of this treatment, CRIM's secured tax claims should not be considered impaired. The end result would preclude CRIM's Classes 3A and 3B from voting to accept the Joint Plan for purposes of "cramdown" confirmation under Section 1129(b) and block confirmation of Debtors' Joint Plan for failure to have one consenting impaired class in the individuals' case, pursuant to § 1129(a)(10).

Section 1129(a)(9)(C) provides for payment of tax claims under § 507(a)(8) in Chapter 11 as follows:

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
> . . .
> (C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash—
> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
> (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)).
> . .

11 U.S.C. § 1129(a)(9)(C).

Accordingly, unsecured tax claims that fall under § 507(a)(8) are entitled to priority treatment and may not be separately classified as impaired in a class of its own or as part of an impaired

---

[2] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

-4-

creditor class. On the other hand, secured tax claims are specified in subsection § 1129(a)(9)(D), which reads:

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
>
> . . .
>
> (D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

11 U.S.C. § 1129(a)(9)(D).

This section provides for payment of secured tax claims in the same manner as unsecured priotity tax claims, except to the extent that the holder of the claim has agreed to a different treatment.

PRLP contends that CRIM's secured tax claim is not impaired due to the statutory treatment afforded under § 1129(a)(9)(C) by way of § 1129(a)(9)(D). PRLP cites In re Bryson Properties, 961 F.2d 496 (4th Cir. 1992) for the proposition that secured tax claims cannot be impaired due to the Bankruptcy Code's treatment of a secured tax claim similar to that of a priority tax claim under § 1129(a)(9)(C). The Court in Bryson stated that unsecured priority tax claims may not be designated as an impaired class with a right to vote on a plan because unsecured priority tax claims under § 1129(a)(9)(C) are expressly excluded from classification pursuant to § 1123(a)(1).

This case and other cases cited by PRLP do not convince the Court that secured tax claims should be considered unimpaired, other than for the Code's priority treatment afforded to secured tax claims under § 1129(a)(9)(C) by way of § 1129(a)(9)(D). Bryson is only relevant to unsecured priority tax claims which fall under § 507(a)(8) and are excluded from designation as

a class under § 1123(a)(1). [3] Furthermore, at the time of <u>Bryson</u>'s pronouncements on unsecured tax claim treatment, § 1129(a)(9)(D) had not been enacted by BAPCPA to provide for the manner in which secured tax claims should be paid. <u>In re Tree of Life Church</u>, 522 B.R. 849, 860 (Bankr. D.S.C. 2015).

Although § 1129(a)(9)(D) provides for payment of certain secured tax claims in the same manner as unsecured priority tax claims, it neither expressly states or passively implies that such treatment prohibits the classification of a secured tax claim for purposes of voting and cramdown considerations. The Court adopts the position taken in <u>In re Tree of Life Church</u>, which held that:

> Although the amendments to the Code provided by BAPCPA now allow secured tax claims to qualify for treatment similar to unsecured priority tax claims, BAPCPA did not alter the language of § 1123(a)(1); secured tax claims are not—and were not at the time of <u>Bryson Properties</u>—a type of claim which a debtor was unable to designate as part of a class for voting purposes in accordance with § 1123(a)(1). If in passing and enacting BAPCPA Congress intended to exclude secured tax claims from classification for voting purposes, it would have done so in the same express manner in which claims under §§ 507(a)(2), (3), and (8) were and continue to be statutorily excluded. <u>See</u> § 1123(a)(1). Therefore, the undersigned finds that the plain language of § 1123(a)(1) permits [a] [d]ebtor to separately classify. . .secured tax claims.

<u>Tree of Life Church</u>, 522 B.R. at 861.

PRLP's proposition that § 1129(a)(9)(D)'s treatment of secured tax claims—similar to that of unsecured tax claims—renders classified secured tax claims unimpaired for purposes of voting, is unsubstantiated. <u>Tree of Life Church</u>, 522 B.R. 849; <u>In re K Lunde</u>, LLC, 513 B.R. 587

---

[3] Section 1123(a)(1) lists the following claims not subject to designation, as follows:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
(1) designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests. . .

11 U.S.C. § 1123(a)(1).

(Bankr. D. Colo. 2014); In re RAMZ Real Estate Co., LLC, 510 B.R. 712 (Bankr. S.D.N.Y. 2014). Thus, the secured tax claims may be separately classified as impaired.

Even if CRIM's secured tax claim can be separately classified, PRLP challenges CRIM's impairment. In the case at hand, the Joint Plan's treatment impairs CRIM's secured claims. As the Court previously noted in regard to CRIM's claims, Debtors' Joint Plan proposes payment of CRIM's claims through thirty-six monthly payments plus 3.5% interest. However, the proposed interest rate under the Joint Plan is less than that afforded to CRIM under applicable nonbankruptcy law. Puerto Rico law allows for CRIM's collection of 10% interest on due and unpaid taxes. P.R. Laws Ann. Tit 21 § 5091. Such interest rate was asserted by CRIM and left unprovided for in the Joint Plan. As such, CRIM is clearly impaired by Debtors' Joint Plan.

Having addressed CRIM's impairment in this reconsideration, we now address PRLP's initial objection to the Joint Plan's confirmation predicated on its noncompliance with § 511 of the Bankruptcy Code.[4] Section 511 governs the rate of interest applicable to tax claims when payment thereof is required in order for a creditor to receive the present value of its allowed tax claim. 11 U.S.C. § 511(a). Nevertheless, § 1129(a)(9) directs plan proponents to pay the present value of such claims unless any of the claimholders there listed—including secured tax claims under § 1129(a)(9)(D)—agree to accept less favorable treatment under the plan. This objection may be disposed of due to the fact that CRIM has voted to accept the plan as proposed.

Therefore, the Joint Plan's treatment of CRIM's secured tax claim alters CRIM's right to collect 10% interest on unpaid prepetition property taxes. As a result, CRIM's claims are impaired under the proposed Joint Plan's treatment and therefore, are a class entitled to vote under the plan. Consequently, PRLP's motion for partial reconsideration is DENIED.

---

[4] "PRLP's Post-trial Brief," Docket No. 376, at 43, ¶ (iii).

-7-

## V.    Debtors' motion for partial reconsideration

The Court previously ordered Debtors to consolidate or amend their plan to provide for individual treatment of PRLP's claim on the part of each debtor, both the corporate and the individual debtors.

Debtors now ask the Court to reconsider its order denying confirmation of the proposed Joint Plan or that in the alternative, the Court grant Debtors' substantive consolidation.[5] Debtors assert that the Joint Plan does provide for the consolidation of all claims, not only that of PRLP, and that substantive consolidation is unnecessary. However, they reluctantly agree to consolidation, if it is the only way to achieve confirmation of the proposed plan.

The Joint Plan provides that PRLP's claims will be treated as a single claim with payment to come from the rental stream of income from the corporate debtor and individual debtors. Debtors propose to pay PRLP's claim in full in a five year period with an interest of 5.15% and a lump-sum balloon payment due at the end of the payout period. Both Debtors are liable to PRLP for the entire amount of the reduced claim and have provided collateral on account of the claim. It is undisputed that the aggregate value of the collateral is $2,510,000, of which $2,110,000 is owned by the corporate debtor and $400,000 by the individual debtor.[6] It is also undisputed that, as of February 18, 2015, PRLP's claim was reduced to $2,346,089.48 due to adequate protection payments that were applied towards the loan's principal throughout the cases' administration.[7]

---

[5] Additionally, upon Debtors' motion, the Court amends its factual findings as stated in the Opinion and Order entered on June 16, 2015, at page 2, footnote one, to clarify that the corporate debtor owns an unencumbered commercial property. The rents received from the lease of said property will be used towards the Joint Plan's funding.

[6] See "PRLP's Post-trial Brief," Docket No. 376, at 11, ¶¶ 68, 70; "Debtors' Post-trial Brief," Docket No. 375, at 3, ¶ 2.

[7] See "PRLP's Post-trial Brief," Docket No. 376, at 11, ¶¶ 67; "Debtors' Post-trial Brief," Docket No. 375, at 3, ¶ 2; "Opinion and Order entered June 19, 2015," Docket No. 400, at 12. (Allowing PRLP's claim of $66,627 in prepetition legal expenses).

-8-

PRLP'S claim is afforded secured treatment in its entirety because the combined collateral held by both Debtors has a value of $2,510,000 which is greater than the amount of the reduced claim of $2,346,089.48 as of February 2015, and that continues to decrease on a monthly basis due to Debtors' adequate protection payments. 11 U.S.C. § 506.  Even though each debtor, separately, has an unsecured portion (if the claim is considered without the collateral of the other debtor), the treatment under Debtors' Joint Plan provides for each Debtors' unsecured portion to be paid as secured.  This secured treatment is achieved by each unsecured portion being reciprocally secured by the other debtor's collateral. The estate of the corporate debtor (a third party payment regarding the individual debtor) is paying the individual debtors' unsecured deficiency as a secured payment and vice versa.[8]  Thus, the claim, as a whole, is being paid completely as secured.[9]

Consistent with Debtors' treatment of PRLP's claim as a single secured claim in the Joint Plan and the fact that both Debtors hold only one loan for which they are jointly and severally liable,  it follows that the entire amount of the claim is over-secured because the aggregate amount of the collateral is more than the claim.

---

[8] The aggregate amount of collateral is $2,510,00 and the amount owed was reduced to $2,346,089.48 as of February 18, 2015.   The corporate debtor holds $2,110,000 of the collateral and pays $16,851.08 and the individual debtor holds $400,000 of the collateral and pays $3,194.52, for a total monthly payment of $20,045.60. As such, the treatment afforded this claim is secured in its entirety: any unsecured portion that each debtor may have (if treated separately) is paid by the other as its share of a secured payment. See "Debtors' Reconsideration," Docket No. 406, at 7.

[9] Under § 506(a)(1), the value of a creditor's secured claim is determined in light of the valuation of the property and in conjunction with a plan affecting the creditor's interest. The determination of a creditor's secured status must take into consideration the pragmatic purposes of § 506(a). In essence, § 506(a) operates as a substitute for enforcement procedures in state law by fixing the value of a secured creditor's legal entitlements associated with its security interest while avoiding the enforcement process itself so that the property may be used or disposed of in a manner consistent with the goals of the Bankruptcy Code. 4 Collier on Bankruptcy ¶ 506.03 (Alan N. Resnick & Henry J. Sommer eds, 16th ed.). Once a creditor's secured status is determined through a valuation of its collaterals for purposes of plan confirmation, Chapter 11 debtors may avoid foreclosure or other enforcement and retain the possession of their property so long as the secured creditor receives either (i) a present payment in the full value of the secured portion of the claim, or (ii) a promise of future payments that have a present value equal to the secured portion of the claim, such as a promise made pursuant to a plan that provides for full repayment over time of the secured portion of the claim. Id.

The claim PRLP may ultimately assert in the present bankruptcy proceedings is governed by bankruptcy law and by local statutes.  Section 101(5) of the Bankruptcy Code defines a claim as:

> (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

Such a claim or interest, proof of which is filed by a creditor under § 501, is deemed allowed. 11 U.S.C. § 502. Whether a creditor is allowed to enforce its claim is a matter of federal law and of the bankruptcy court's exercise of equitable powers. See In re Shelter Enterprises, 98 B.R. 224, 229 ("State substantive law determines the existence of a claim; however, its allowance or disallowance is a matter of federal law and is left to the bankruptcy court's exercise of equitable powers."); Matter of Ford, 967 F.2d 1047, 1050 (5th Cir. 1992). However, the validity of a creditor's claim is determined by state law. Grogan v. Garner, 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991).

In the instant case, secured creditor PRLP asserts full payment from each of Debtors because they are solidarily liable for the full amount of the debt. Under Puerto Rico law, the payment obligation from joint and several Debtors is exigible from each debtor. Each debtor must jointly satisfy the common obligation, pursuant to the ties of solidarity it contracted under the loan agreement.[10]

---

[10] Solidarity is defined as "[t]he subjective plurality. . .instead of dividing the obligation in separate credits or debts; it, on the contrary allows only one of the creditors to demand the full amount of the credit and binds each one of Debtors to pay the whole debt." Serralta v. Martínez Rivera, 97 P.R.R. 454 (1969); Torres v. M.B.A., 91 P.R.R. 693

Accordingly, a creditor may obtain satisfaction from any and all of the joint debtors up to the value of its credit. PRLP is entitled to collect its claim in full, but is not entitled to duplicate payment under Puerto Rico law by asserting and realizing from both Debtors' estates through plan distribution in the present bankruptcy proceedings. To treat PRLP's claim as two distinct claims with a right to receive secured and unsecured payments from each of the two Debtors would be tantamount to a double payment for the same amount owed. Any payment of asserted unsecured portions through plan distributions to PRLP would be a duplicate payment.[11] Consequently, after careful review, the Court agrees with Debtors that if they were to treat PRLP's claim separately, the equitable distribution scheme of the Bankruptcy Code would be defeated, providing a windfall to PRLP and resulting in a manifest injustice to Debtors and in discriminatory treatment to other creditors, especially the unsecured creditors.[12]

As a result of the treatment of PRLP's claim as oversecured under the Joint Plan, § 506(b) entitles PRLP to post-petition interest. [13] If a creditor's collateral is worth more than the secured claim it holds, such creditor is entitled to claim post-petition interest only to the extent of

---

(1965); García v. Government of the Capital, 72 P.R.R. 133 (1951). Each and every one of Debtors is bound to pay the totality of the amount owed to the creditor, who has been secured by the total liability reaching each debtor. The creditor has towards each debtor a "right of choice, as he may require payment from any of the joint debtors or simultaneously from all." P.R. Laws Ann. tit. 31 § 3108. Article 1097 of the Civil Code further provides: "The actions instituted against one shall not be an obstacle for those that may be brought subsequently against the others, as long as it does not appear that the debt has been collected in full." P.R. Laws Ann. tit. 31 § 3108. Furthermore, Art. 1098 of the Civil Code provides: "The payment made by any of the joint debtors extinguishes the obligation. . .The nonfulfillment of the obligation by reason of the insolvency of a joint debtor shall be made good by his co-debtors in proportion to the debt of each of them." P.R. Laws Ann. tit. 31 § 3109.

[11] For its secured claim, PRLP filed Proof of Claim No. 1, as amended, in the corporate case asserting the amount of $2,110,000 as secured and a deficiency of $591,812.06 as unsecured and Proof of Claim No. 9, as amended, asserting $400,000 as secured and a deficiency of $2,301,811.06 as unsecured. In total, PRLP asserts $2,701,810.06 from each debtor on account of a single secured claim.

[12] See "Debtors' Reconsideration," Docket No. 406, at 15.

[13] Section 506(b) defines an over-secured creditor's entitlement to post-petition interest, as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

-11-

its oversecurity. 11 U.S.C. § 506(b); In re SW Boston Hotel Venture, LLC, 748 F.3d 393, 404 (1st Cir. 2014). PRLP has claimed, in the alternative, payment of post-petition interest in the event that the Court found its claims to be a single oversecured claim. PRLP's asserted post-petition interest must be provided for in Debtors' Joint Plan. The parties seem to be in agreement as to the event of PRLP's oversecurity, beginning on July 15, 2014.[14] As such, Debtors must propose a treatment for PRLP's secured claim taking into account the payment of post-petition interest.

## VI. PRLP's objections to the Joint Plan's confirmation

Having addressed on the parties' motions for reconsideration, the Court is in a position to rule on certain objections raised by PRLP not previously considered in our Opinion and Order of June 16, 2015, such as the interest rate, the disposable income requirement and the absolute priority rule.

### A. Debtors' proposed interest rate

We now turn to the cramdown rate of interest at issue proposed under the Joint Plan. The cramdown provisions set forth in § 1129(b) allow courts, over the objections of creditors, to confirm a plan of reorganization if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). In order for a plan to be fair and equitable to a secured creditor it must provide for one of three treatments. First, the plan may provide that (a) the secured creditor retains its liens securing its claim, and (b) the secured creditor will receive "deferred cash payments totaling at least the allowed amount of [its] claim. . . as of the effective

---

[14] See "PRLP's Post-trial Brief," Docket No. 376, at 14, ¶¶ 149-150; "Debtors' Post-trial Brief," Docket No. 375, at 14, ¶ 2; "PRLP's Exhibit C-8," Docket No. 374, at 3, row 1; "Debtors' Exhibit D-6 (Reconciliation of PRLP's claim)," Docket No. 364, at 1, row 36 (Reflecting the principal's balance as of July 2014 plus accrued prepetition interest. There is a discrepancy of $3,100 in parties' principal balance calculation for July 2014 that Debtors explain as an unapplied check payment to PRLP in March 2014. On September 29, 2014, PRLP applied the check payment. "PRLP's Exhibit C-8," Docket No. 374, at 3, row 4 ).

date of the plan, of at least the value of [its] interest in the estate's interest in [the collateral]." 11 U.S.C. § 1129(b)(2)(A)(i)(I) and (II). Second, the plan may provide for the sale of the collateral subject to the liens of the secured creditor. 11 U.S.C. § 1129(b)(2)(A)(ii). Third, the plan may provide for the realization by the secured creditor of the indubitable equivalent of its claim. 11 U.S.C. § 1129(b)(2)(A)(iii).

Debtors' Joint Plan proposes to comply with the prescribed treatment in § 1129(b)(2)(A)(i)(I) and (II). For this reason, PRLP is entitled to deferred present-value payments of its secured claims if the Joint Plan is to be confirmed over its objection. The issue at hand is whether the proposed deferred payments in Debtors' Joint Plan will provide PRLP with the present value of its interest. Debtors' Joint Plan proposes to pay PRLP's secured claim at the cramdown interest rate of 5.15% per annum in order to satisfy the requirements of 11 U.S.C. § 1129(b). Each party had the opportunity to present the testimony of expert witnesses. PRLP contends that Debtors' proposed Joint Plan does not satisfy § 1129(b)(2)(A)(I).

To arrive at the proper cramdown interest rate, the parties urge the Court to adopt the "formula" approach as stated by the United States Supreme Court in Till v. SCS Credit Corp., 541 U.S. 465, 477 (2004). From the evidence presented by both parties in their legal briefs and through the testimony of their expert witnesses at the confirmation hearings, there is no controversy between the parties that the formula approach should be controlling.

The United States Supreme Court in Till embraced the formula approach as the preferred method for determining the cramdown interest rate. The formula method "entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings." Id. at 479. The formula approach starts at the national prime rate, which reflects the financial market's estimate of the rate that a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan,

the risk of inflation, and the risk of default. Id. Because bankruptcy debtors pose a greater risk of nonpayment than solvent commercial borrowers, the approach requires the Court to adjust the prime rate accordingly. The appropriate size of that risk adjustment rate added depends on factors such as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. Id. The plurality opinion recognized that courts have generally approved a risk premium of 1 to 3%. Id. at 480. The Supreme Court stated in footnote 14 of the Opinion that:

> . . .Because every cramdown loan is imposed by a court over the objection of the secured creditor, there is no free market of willing cramdown lenders. Interestingly, the same is not true in the Chapter 11 context, as numerous lenders advertise financing for Chapter 11 debtors in possession. . .Thus, when picking a cramdown rate in a Chapter 11 case, it might make sense to ask what rate an efficient market would produce. In the Chapter 13 context, by contrast, the absence of any such market obligates courts to look to first principles and ask only what rate will fairly compensate a creditor for its exposure.

Till, 541 U.S. at 477, n. 14.

The parties agree that there is no such market in Puerto Rico that may direct the Court's analysis on an efficient market rate. Because no such market exists, the Court must employ the formula approach endorsed by the Till plurality in order to determine the cramdown interest rate.

The Court finds PRLP's evidence on this issue is contrary to the factors that must be taken into consideration when applying the formula approach. The factors considered by PRLP to arrive at a higher interest rate of 10% are in line with current market conditions under an efficient market approach, as sustained by the record, even though PRLP agrees that such no such market exists. Holding Debtors to standards of creditworthiness under current market conditions—where no market exists even for uncreditworthy debtors in distress—is to hold that Chapter 11 cramdown is never an option for bankrupt debtors. "Calculating the market rate of

interest solely from the viewpoint of a coerced loan tends to jeopardize the success of a Chapter 11 plan and defeat the rehabilitative purposes of bankruptcy reorganization." In re E.I. Parks, 122 B.R. 549, 554 (Bankr. W.D. Ark. 1990).

In applying the formula approach to this case, the evidence in the record establishes that the national prime rate of interest rate as of confirmation was 3.25%. The Court must determine the percentage of interest necessary to increase the prime rate to account for the risk that PRLP's secured claim might ultimately not be satisfied.

The risk factors considered by the Court to conclude that an interest rate of 5.15% would be appropriate include: Debtors' ability to pay under the Plan, and the ability to maintain collateral coverage throughout the plan. Upon weighing the risk factors, a payout period of five years and the required balloon payment from the sale of unencumbered property justifies a higher interest rate. The balloon payment increases the risk associated with potential default, justifying an increase in the interest rate. On the other hand, factors that minimize risk consist in that Debtors have paid all post-petition expenses without the need to seek additional outside financing. Furthermore, Debtors have paid adequate protection payments to PRLP throughout the administration of the cases, on a timely basis. Management's personal involvement provides assurance that Debtors are motivated to make their payments and reorganize successfully. Debtors have a strong commitment to the continuing success of their enterprise. Upon balancing the risk factors, the Court finds that the 5.15% rate of interest proposed by Debtors appropriately accounts for the risks associated with the Joint Plan and provides for the value of PRLP's interest in Debtors' collateral.

**B.      Individual debtors' disposable income test, under § 1129(a)(15)**

PRLP asserts that the Joint Plan is unconfirmable because it does not provide a showing of the individual debtors' compliance with § 1129(a)(15) of the Bankruptcy Code. Section 1129(a)(15) reads as follows:

> In a case in which Debtor is an individual and in which the holder of an <u>allowed unsecured claim</u> objects to the confirmation of the plan—
> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of Debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15) (Emphasis added).

"Standing to object on this ground is given to any single unsecured creditor holding an allowed claim." 7 Collier on Bankruptcy ¶ 1129.02[15]. Under the Court's holding stated in this Opinion, PRLP is no longer an unsecured creditor. Consequently, PRLP lacks standing to raise this objection.

**C.  Debtors' violation of the absolute priority rule, pursuant to § 1129(b)(2)(B)(ii)**

PRLP argues, as an undersecured creditor, that Debtors' Joint Plan violates the absolute priority rule because the unsecured claims will receive a 5% distribution in both cases. In view of the fact that PRLP is now a fully secured creditor that will be paid in full, this objection is moot. No other creditor raised this issue.

-16-

**VII.    Conclusion**

For the foregoing reasons, Debtors must amend the Joint Plan to provide for post-petition interest paid to PRLP's secured claim classified under Classes 4A and 4B of the Joint Plan.

SO ORDERED.

In San Juan, Puerto Rico, this 30th day of December, 2015.

*Mildred Caban*

Mildred Caban Flores
U. S. Bankruptcy Judge

-17-