**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

IN RE:

**MANUEL MEDIAVILLA, INC.,**

Debtor

**CASE NO. 13-2800 (MCF)**

**CHAPTER 11**

IN RE:

**MANUEL MEDIAVILLA AND
MAYDIN G. MELENDEZ,**

Debtors

**CASE NO. 13-2802 (MCF)**

**CHAPTER 11**

**OPINION AND ORDER**

The Court is faced with three remaining issues regarding the plan confirmation of chapter 11 debtors Manuel Mediavilla, Inc., Manuel Mediavilla and Maydin Melendez ("Debtors") to wit: 1) creditor, PRLP 2011 Holding, LLC's ("PRLP") claim of post-petition interest; 2) the preservation of PRLP's lien on Debtors' new lease agreement and (3) the subsequent feasibility of the joint amended plan in light of Debtors' new lease agreement.

**I.     Procedural Background**

On December 30, 2015, the Court issued an opinion and order determining that both corporate and individual Debtors could provide treatment for PRLP's secured claim on a joint basis. The practical effect of this treatment results in an over-secured status for PRLP with entitlement to post-petition interest.

-1-

A month later, Debtors submitted an amended joint plan of reorganization in compliance with the Court's ruling providing for payment to PRLP's claim of post-petition interest.  PRLP filed an opposition thereto.

On May 10, 2016, the Court held a status conference to address pending confirmation issues.  PRLP made a timely claim of post-petition interest and Debtors have acknowledged that PRLP is over-secured. The parties were granted forty five days to file simultaneous briefs and replies on the three aforementioned confirmation issues which are pending resolution. PRLP stated that with regard to feasibility and post-petition interest an evidentiary hearing would not be necessary. Debtors stated that new ballots would not be circulated for the amended joint plan since unsecured creditors will not be affected by the proposed payment of post-petition interest to PRLP. Thus, the matters were submitted by the parties on the motions for the Court's resolution.

## II.     Post-petition interest

The crux of the matter is ascertaining the appropriate post-petition interest for PRLP's over-secured claim.  Debtors propose the contractual pre-default rate of 5% interest. PRLP seeks 8% representing the contractual default rate rather than the 5% pre-default rate, as proposed by Debtors.

In support for a lower interest rate, Debtors adduce that the equities throughout the case favor an adjustment of the post-petition interest rate PRLP may recover. PRLP argues that unless Debtors provide equitable reasons that warrant an adjustment to a lower rate, there is a presumption that the contractual default rate should apply to the calculation of post-petition interest. PRLP argues that default interest rates, such as the one included in the loan documents, are enforceable under local law. PRLP lists a variety of equitable considerations that would

support a denial of an adjustment of interest at the lesser contractual base rate in the event that the Court finds that the default rate does not apply in this case.

Section 506 of the Bankruptcy Code provides that a holder of an over secured claim is entitled to "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). [1] If a creditor's collateral is worth more than the secured claim it holds, such creditor is entitled to claim post-petition interest only to the extent of its over security. The over-secured creditor may receive post-petition interest up to the value of its equity cushion, i.e., the difference between the value of the allowed claim and the value of the collateral securing the claim. In re SW Boston Hotel Venture, LLC, 748 F. 3d 393, 404 (1st Cir. 2014). In United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989), the Supreme Court held that while an award of fees, costs and other charges is dictated by the loan agreement, the award of interest is not. State law, on the other hand, governs a creditor's claim of post-petition interest. In re 785 Partners LLC, 470 B.R. 126, 133. (Bankr. S.D.N.Y. 2012).

Default interest rate provisions are commonly included in mortgage transactions as is the case here. The agreement may provide for a higher interest rate in the event a borrower's default. The default interest rate traditionally serves to compensate the lender for the additional but unforeseen costs associated with a defaulting borrower. The costs incurred in performing this task vary in each case and cannot be factored into the interest rate charged prior to the lender's default. Matter of Terry Ltd. Partnership, 27 F.3d 241, 244 (7th Cir. 1994). Default interest rates aid secured lenders quantify the costs of monitoring a potential default, In re Vest Associates,

---

[1] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C.§§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,Pub. L. No. 109-8 (the "Bankruptcy Code").

217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998), and represent a pricing protection to avail lenders from the costs of not being paid on time. SW Boston Hotel Venture, 748 F.3d 415.

Generally, courts have applied one of three rules when faced with post-petition interest claims by over-secured creditors:

> One line of authority holds that the only limitation on the oversecured creditor's right to default rate interest is the enforceability of such right under applicable non-bankruptcy law. See e.g., In re: K & J Properties, Inc., 338 B.R. 450, 460–61 (Bankr.D.Col. 2005).
>
> A second line of authority takes the position that a claim for default rate interest is not a claim for interest at all, but rather a claim for a "charge," which, as noted above, must be reasonable under § 506(b). See In re AE Hotel Venture, 321 B.R. 209 (Bankr.N.D.Ill. 2005).
>
> A third line of authority reasons that the Bankruptcy Code has the equitable power and duty to examine the circumstances of the oversecured creditor in each particular case and consider notions of fairness and equity in determining whether to award default rate interest. This appears to be the majority view. See In re Terry Limited Partnership, 27 F.3d 241, 243 (7th Cir. 1994) ("what emerges from the post Ron Pair decisions is a presumption in favor of the contract rate subject to rebuttal based upon equitable considerations"); In re Laymon, 958 F.2d 72, 75 (5th Cir. 1992) (endorsing a flexible approach where the higher default rate would produce an inequitable or unconscionable result.)

In re La Guardia Associates, L.P., 2006 WL 6601650, at *38–39, Bankr. E.D. Pa. (2006).

After review of the three approaches, the Court adopts the majority rule.   In following the third line of authority, a bankruptcy court must determine whether to apply a contractual default rate or a contractual pre-default rate of post-petition interest by balancing the equities. In re Jack Kline Co., Inc., 440 B.R. 712, 745 (Bankr. S.D. Tex. 2010). As stated earlier, the default rate of post-petition interest is presumed valid until the equities weigh against its application. Id.

In the instant case, the original obligee, Banco Popular de Puerto Rico, negotiated with Debtors at yearly intervals since 2009 to vary repayment terms contained in the 2006 loan

documents. On May 21, 2009, Debtors and Banco Popular agreed to a 2.99% interest rate decrease. Again, on December 23, 2009, Banco Popular reduced the contractual interest rate to 5%. Two separate repayment schedules were further agreed upon by the parties on June 14, 2010 and February 25, 2011. After these forbearance agreements occurred, Banco Popular could have exercised its contractual rights by claiming a default interest rate of 8%. Banco Popular chose not to do so.

PRLP acquired from Banco Popular this loan account in September 2011. Pursuant to previous forbearance agreements and to the loan documents, the parties would renegotiate repayment terms. If the parties did not reach an agreement by January 25, 2012, the loan principal and interest would be considered immediately due and payable. PRLP was aware of Debtors' numerous events of default and the loan's maturity date; despite this, PRLP did not enforce the contractual default rate and engaged in negotiations with Debtors. Since the parties were unable to reach an agreement, in August 2012, PRLP declared the loan in default and exercised its rights pursuant to the loan documents, charging Debtors the default interest rate. The following month, PRLP filed foreclosure actions against Debtors in local court.

Although the default interest rate provision in the loan documents is contractually valid and enforceable pursuant to Puerto Rico law, the Court rejects PRLP's list of equitable considerations in argument of a higher default interest rate. The Court will exercise its discretion to disallow the contractual default rate given the parties' relationship and pre-bankruptcy course of dealing. The Court finds there is no justification for an increased default rate to compensate PRLP for any assumed increase in risk following default. PRLP acquired from Banco Popular Debtors loan account with full knowledge of Debtors' financial inability to comply with its loan obligations. Banco Popular did not exercise its right to charge a higher interest rate due to Debtors' default. It was not until about two months before filing the foreclosure action that PRLP

-5-

exercised its right to charge the default rate of interest and by that time, a year had passed since its acquisition of the loan.

Associated costs related to Debtors' default are not present in this case. Banco Popular did not assert the contractual default rate although it may have incurred in these costs since its forbearance activities beginning in 2009. The risks and costs associated to Debtors' default and non-payment would have been factored into PRLP's acquisition of Banco Popular's forborne loan. Unforeseen costs to a lender associated with a borrower's default are not existent to PRLP since the loan's acquisition.

Furthermore, there is a risk that the default rate may function as a coercive penalty that affects Debtors' possibilities of reorganization. In such cases, courts have held that it would be inequitable to allow its impact to destroy a debtor's opportunity to reorganize. In re Dixon, 228 B.R. 166, 175 (W.D.Va. 1998). The Court finds no justification to award post-petition interest at the default rate.

Bankruptcy courts also consider important the impact of post-petition interest on other creditors. Courts are cognizant of the harm that a higher default rate might cause upon other creditors. In re Process Property Corp., 327 B.R. 603, 609 (Bankr. N. D. Tex. 2005). This factor weighs heavily for disallowing post-petition interest at the default rate.

The Court estimates that the allowance of interest at the default rate would add approximately $290,000 to the amounts to be paid to PRLP on the effective date. The allowance of default interest rate would provide a windfall for PRLP and prejudice creditors junior to it. Such a result would severely harm the prospect of Debtors' reorganization. For the above-stated reasons, the Court finds that the equities in this case favor the disallowance of PRLP's claim of interest at the default rate. Therefore, the appropriate post-petition interest rate is the contractual pre-default rate of 5%.

### III. PRLP's Lien Retention on the New Lease Agreement

At the status conference hearing held on May 10, 2016, PRLP raised its concerns regarding the preservation of PRLP's lien on the new lease agreement with the tenant, Centro de Recaudación de Ingresos Municipales ("CRIM"), and the current feasibility of the amended joint plan in light of the new lease agreement. After reviewing the briefs and exhibits, the Court construes that the issue regarding the retention of PRLP's lien on rents from the CRIM lease is moot. Debtors have provided in the amended joint plan for the continuity of PRLP's liens on property securing its interest. Furthermore, Debtors proffered in its reply brief that it had negotiated for CRIM to expressly acknowledge the assignability of rents to PRLP and that CRIM's rental payments would be payable to Debtors or PRLP. Based on Debtors' proffer, the Court concludes that neither Debtors' amended joint plan nor the lease agreement with CRIM impair PRLP's lien on rents. Therefore, PRLP's objection to confirmation of the amended joint plan based on Debtors' failure to preserve its liens on properties securing its claim is moot.

### IV. Feasibility

PRLP raises feasibility concerns as to Debtors' ability to provide for PRLP's secured claim in full due to the decrease in rental payments based on the new lease arrangement with CRIM. The decrease in rents is attributed to CRIM's withholding of $670 in monthly rents in order maintain and improve the leased property. Debtors have proffered that the rent decrease will be coupled by CRIM's improvements and maintenance to PRLP's collateral in the amount of $36,000. The rent's decrease will be capped to the amount of $36,000 even if improvement costs run higher. Also, the decrease will not affect scheduled payments under the amended joint plan to PRLP. Debtors were able to renew a contract and double the duration of CRIM'S tenancy to ten years. In doing so, Debtors secured a source of income necessary to fund plan payments to PRLP.

Debtors addressed PRLP's feasibility concerns by submitting new projections and payment schedules that have demonstrated to the Court's satisfaction that PRLP will receive full payment of its secured claim. These projections reflect adjustments in Debtors' expenses that take into account the lease's terms. The Court finds that PRLP's objection to confirmation based on feasibility concerns related to Debtors' renewal of the CRIM lease is unfounded and therefore denied.

**V.     Conclusion**

Based on the foregoing reasons and those enunciated in the Court's Opinion and Order dated December 30, 2015, the Debtors' amended joint plan is confirmed. A separate order shall be entered confirming the plan.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23 day of September, 2016.

MILDRED CABAN FLORES
U.S. Bankruptcy Judge

-8-